UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 12-11486-RWZ


UNITED STATES OF AMERICA

v.

JOHN LEZDEY, NOREEN LEZDEY,
JAMIE HOLDING COMPANY, LLC,
WORLD FINANCIAL and
COUNTRYWIDE HOME LOANS, INC.


MEMORANDUM OF DECISION

February 26, 2013


ZOBEL, D.J.

The United States of America (the "government") filed this action to enforce and

foreclose federal tax liens on a parcel of real property (the "Property") located in

Eastham, Massachusetts.  The government contends that defendants John and Noreen

Lezdey, whose unpaid federal income tax liabilities gave rise to the liens, have used a

series of nominee corporations, including defendants Jamie Holding Company, LLC,

and World Financial, to shield the property from the Internal Revenue Service ("IRS").

Noreen Lezdey, proceeding pro se,[1] moves for dismissal of the case, claiming the

government failed to effectuate timely service of process in accordance with Fed. R.

Civ. P. 4(m) and Local Rule 4.1 (Docket # 10).

---

[1] John Lezdey, an attorney and Noreen Lezdey's husband, passed away on January 1, 2013.
See Suggestion of Death (Docket # 12).

## I. Background

On March 17, 2008, the government filed a civil action in the Middle District of Florida, United States v. Lezdey, No. 08-cv-00504 (M.D. Fl.) ("Lezdey I"), seeking to reduce to judgment the unpaid federal income tax liabilities assessed against the Lezdeys for the years 1991, 1992, 1999, 2000, and 2001.  After stipulating to the dismissal of claims for 1999, 2000, and 2001 without prejudice, the government obtained a judgment against the Lezdeys on the remaining claims (1991 and 1992) on June 2, 2010.  The government then brought a second suit against the Lezdeys on November 7, 2011, United States v. Lezdey, No. 11-cv-02495 (M.D. Fl.) ("Lezdey II"), for judgment on their tax liabilities for 1999, 2000, and 2001.  That case is still pending.[2]

In the meantime, on August 10, 2012, the government filed the present action to collect on the judgment entered in Lezdey I by seeking to foreclose its tax liens against the Property.  According to the government's complaint, the Lezdeys obtained the Property in October 1991.  In early 2001, they transferred their interest in the Property to Jamie Holding Company, LLC, which transferred it back in 2004 to Noreen Lezdey, who once again transferred her interest to Jamie Holding Company several weeks later.  In 2006, Jamie Holding Company transferred its interest in the Property to World Financial.  The complaint alleges that neither Jamie Holding Company nor World Financial paid any valid consideration in exchange for record ownership of the Property

---

[2] On February 5, 2013, the district court for the Middle District of Florida granted a motion by Noreen Lezdey to stay Lezdey II for 120 days due to the death of John Lezdey.

and that each entity held title to the Property as the nominee of the Lezdeys.  The government did not complete service of the complaint on the Lezdeys or any other defendants.

On December 11, 2012, the government learned that World Financial had sold the Property to an entity known as "World-Pharm Trust" on August 3, 2012.  John Lezdey and his son Jarett Lezdey, according to the government, had signed the quitclaim deed as the purported trustees of both World Financial and World-Pharm Trust.  The government filed an amended complaint on December 14, 2012, adding World-Pharm Trust as a defendant.

On or about January 4, 2013, Noreen Lezdey sent a letter to the clerk of this court requesting automatic dismissal of the case under Local Rule 4.1 for failure to effectuate timely service of process in accordance with Fed. R. Civ. P. 4(m).  The government responded on January 23, 2013, with a brief opposing dismissal.  Noreen Lezdey filed a motion to dismiss on February 6, 2013,[3] and the government filed its opposition on February 15, 2013.

## II.  Legal Standard

The timing of service of process is governed by Fed. R. Civ. P. 4(m), which provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service must be made within a specified time."  However, "if the plaintiff shows good cause for the failure, the court

---

[3] Jarett Lezdey, who is not a party to the case, co-signed the motion to dismiss.

must extend the time for service for an appropriate period." Id. Even when no good

cause is shown, "the court has the discretion to dismiss without prejudice or to extend

the time period." United States v. Tobins, 483 F.Supp.2d 68, 77 (D. Mass. 2007)

(quoting In re Sheehan, 253 F.3d 507, 512 (9th Cir. 2001)).

Local Rule 4.1 echoes Rule 4(m)'s 120-day standard, providing in relevant part:

> (a) Any summons not returned with proof that it was served within one hundred twenty (120) days of the filing of the complaint is deemed to be unserved for the purpose of Fed. R. Civ. P. 4(m).

> (b) Counsel and parties appearing pro se who seek to show good cause for the failure to make service within the 120 day period prescribed by Fed. R. Civ. P. 4(m) shall do so by filing a motion for enlargement of time under Fed. R. Civ. P. 6(b), together with a supporting affidavit. If on the 14th day following the expiration of the 120 day period good cause has not been shown as provided herein, the clerk shall forthwith automatically enter an order of dismissal for failure to effect service of process, without awaiting any further order of the court.

## III. Discussion

Pursuant to Rule 4(m), the government had 120 days from August 10, 2012, to

serve defendants with the complaint.[4]  The docket indicates that no proof of service has

been returned as to any of the defendants, and the government does not claim that it

ever effected service.  Rather, the government contends that Noreen Lezdey's motion

for dismissal should be denied as moot because it has filed an amended complaint.  In

the alternative, the government alleges that because the Lezdeys have evaded service,

---

[4] Because the 120-day period expired on December 8, 2012, which was a Saturday, the government had until the following Monday, or December 10, to serve process.  Fed. R. Civ. P. 6(a).

4

refused to waive service, and sold the Property to a "new sham entity" days before the suit was filed, it should receive an additional 120 days to serve the amended complaint.

### 1.  Failure to Comply with Local Rule 7.1(a)(2)

As a preliminary matter, the government argues that the motion to dismiss should be summarily denied because Noreen Lezdey violated Local Rule 7.1(a)(2), which provides that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."  The government claims Noreen Lezdey's failure to meet and confer with its counsel prior to filing her motion "has prejudiced both the United States and the Court, because the relief requested in the motion has already been fully briefed by the parties" (Docket # 13 at 4), i.e., in Noreen Lezdey's letter to the clerk seeking dismissal and the government's brief in response.

Pro se litigants are not exempt from complying with the Federal Rules of Civil Procedure or Local Rules, see Rivera v. Riley, 209 F.3d 24, 27-28 & n.2 (1st Cir. 2000), and it appears undisputed that Noreen Lezdey did not meet and confer with the government's counsel as required by Local Rule 7.1(a)(2).  However, the court has "great leeway in the application and enforcement of its local rules," Gauthier v. United States, No. 4:10-cv-40116-FDS, 2011 WL 3902770, at *11 (D. Mass. Sept. 2, 2011), and Noreen Lezdey's pro se status is not entirely irrelevant, see, e.g. St. John v. CBE Group, Inc., 4:10-cv-40091-FDS, 2011 WL 613741, at *3 n.2 (D. Mass. Feb. 11, 2011) ("for some matters, pro se litigants receive the benefit of the doubt") (citation omitted); Strahan v. Roughead, 1:08-cv-10919-MLW, 2010 WL 4827880, at *10 (D. Mass. Nov.

5

22, 2010) (plaintiff had not complied with Local Rule 7.1(b)(1), but the court considered his motion "nevertheless, because he is <u>pro se</u>").  Significantly, it is unlikely that a conference would have helped "resolve or narrow" the service dispute here given the government's intent to merely "point[] out that Lezdey's requested relief was already before the Court, and thus that no further motion was necessary."  Docket # 13 at 5.

Notwithstanding the government's assertions, I do not find Noreen Lezdey's procedural oversight resulted in any real harm or prejudice to the parties or the court. Summary denial of her motion to dismiss is not warranted.  <u>Steele v. Turner Broad. Sys., Inc.</u>, 746 F. Supp. 2d 231, 239 (D. Mass. 2010) ("The Court agrees that prior consultation [per Local Rule 7.1(a)(2)] is an important precursor to motion practice but does not find the breach of that procedure in this case to be controlling.").

### 2.  Effect of Amended Complaint

The government maintains that because its amended complaint, filed on December 14, 2012, superseded the original complaint, Noreen Lezdey's motion to dismiss for failure to serve the original complaint is moot.  The government's view suggests that filing an amended complaint somehow tolls or restarts the 120-day period for service of process.

This argument lacks merit.  An amended complaint adding a new defendant initiates a new 120-day timetable for service upon the added defendant, but it does not toll the service period as to defendants already named.  <u>See</u> 4B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1137 (3d ed. 2002); <u>Baden v. Craig-Hallum, Inc.</u>, 115 F.R.D. 582, 586 n.3 (D. Minn. 1987); <u>Excalibur Oil, Inc. v.</u>

Gable, 105 F.R.D. 543, 544 n.4 (N.D. Ill. 1985) ("It will not do for [plaintiff] to rely on the

fact of filing an Amended Complaint to justify its lack of prior service on the individual

defendants."). Even where the amended complaint has been served – and here it has

not[5] – courts have held that "service of the amended complaint did not effect service

when the original complaint had not been served." Leonard v. Stuart-James Co., Inc.,

742 F. Supp. 653, 662 (N.D. Ga. 1990) (listing cases). Furthermore, where the

amended complaint is filed more than 120 days after the original complaint – as is also

the case here – it may not be served absent a showing of good cause for the failure to

timely serve the original complaint. Bryant v. Brooklyn Barbeque Corp., 130 F.R.D.

665, 668-69 (W.D. Mo. 1990), aff'd, 932 F.2d 697 (8th Cir. 1991) (concluding that

"plaintiff's attempt to file and serve her amended complaint after the 120 day period had

passed does not preserve her original cause of action and service of the amended

complaint must be quashed") (listing cases).[6]

　　　　While the government may be correct that it needed to file an amended

complaint to add World-Pharm Trust as a defendant, that does not excuse its failure to

serve the other defendants with the original complaint in accordance with Rule 4(m).

Wei v. State of Hawaii, 763 F.3d 370, 372 (9th Cir. 1985) ("[Plaintiff's] desire to amend

---

[5] The government asserts that it recently served the amended complaint on Jarett Lezdey as co-trustee of World Financial and World-Pharm Trust, though no proof of such service yet appears on the docket. The government does not claim to have served any of the other defendants, including Noreen Lezdey, with the amended complaint.

[6] See also id. at 669 (noting that "if a plaintiff who had not shown good cause for failing to serve a complaint with[in] the 120 day period was allowed to file an amended complaint after that time period had passed, there would be no incentive to serve the complaint in a timely manner and the purpose of Fed. R. Civ. P. 4(j), to encourage prompt service, would be emasculated."). Rule 4(j) is the predecessor of Rule 4(m).

his complaint before effecting service does not constitute good cause. . . . Moreover, he could have amended the original complaint after serving it upon the defendants."); Excalibur Oil, Inc., 105 F.R.D. at 544 n.4 ("Once again, the normal and expected procedure would have been to have served defendants first, *then* to amend the Complaint.").

### 3. Good Cause

To avoid dismissal, the government has the burden of demonstrating "good cause" for failing to serve defendants within the required 120-day period.  Fed. R. Civ. P. 4(m); United States v. Ayer, 857 F.2d 881, 884-85 (1st Cir. 1988). "Good cause is likely (but not always) to be found when the plaintiff[']s failure to complete service in timely fashion is a result of a third person, typically the process server, the defendant has evaded service of process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstance[s], or the plaintiff is proceeding pro se or in forma pauperis." McIsaac v. Ford, 193 F. Supp. 2d 382, 383 (D. Mass. 2002) (quoting WRIGHT & MILLER, supra).

The government argues that an extension of time is appropriate here because "defendants have frustrated the United States' efforts to serve them, unnecessarily delaying the prosecution of this case."  Docket # 9 at 8.  In particular, the government claims, unsupported by any affidavit or exhibits, that the Lezdeys have clouded title to the Property by naming a non-existent foreign corporation (World Financial) as the

8

purported owner,[7] evaded service, refused to respond to repeated requests to accept service, failed to appear for depositions in a related case, and sold the Property to World-Pharm Trust shortly before the government filed suit.  Of these allegations, only one – evading service – is relevant to the good cause analysis.[8]

The government retained a process server to serve the Lezdeys at their alleged last known address at 148 Marcdale Boulevard, Indian Rocks Beach, Florida.  After unsuccessful service attempts on October 13, 16, 18, and 22, 2012, the process server allegedly learned from an encounter with Jarett Lezdey that his parents did not live there.  The government then requested on October 31, 2012, that the process server effect service at a nearby address, 140 Marcdale Boulevard, but that home was owned and occupied by a person unrelated to the case.  The process server reported that during the service attempt at 140 Marcdale Boulevard, he or she noticed the Lezdeys' vehicle parked at 148 Marcdale Boulevard and that neighbors confirmed the Lezdeys were visiting Jarett, but that there was no response at that address.  The government speculates that the Lezdeys were at 148 Marcdale Boulevard, but refused to answer the door to evade service; Noreen Lezdey maintains that their vehicle had been

---

[7] The government's amended complaint alleges that World Financial, despite purporting to have a business address in the Cayman Islands, is not a registered Grand Cayman corporation.

[8] Even if the Lezdeys had engaged in the other actions alleged by the government, it is difficult to see how that had any practical effect on the government's ability to effect timely service on them. World Financial's questionable status as a Grand Cayman corporation aside, the government could have attempted to serve World Financial by serving the Lezdeys, its presumed officers or agents.  Fed. R. Civ. P. 4(h).  The Lezdeys are under no obligation to respond to requests for waiver of formal service, Fed R. Civ. P. 4(d); Ryan v. Krause, No. 11-cv-00037, 2012 WL 2921815, at *6-7 (D.R.I. July 17, 2012), and their failure to appear for depositions in another case (Lezdey I, which, in any event, had already been closed) has no bearing on service in this case.  Finally, the government has presented no evidence that the transfer of the Property from World Financial to World-Pharm Trust before the government filed suit was an anticipatory attempt to thwart service.

disabled and parked at that address for 8 months.  The process server also attempted

to serve the Lezdeys at John Lezdey's business address at 2401 West Bay Drive,

Largo, Florida, on December 3, but found the office "visibly vacant."

The government suggests that their failed service attempts at these various

addresses illustrate that the Lezdeys were evading service, or at least were very

difficult to find.  Yet a review of the Lezdeys' judicial proceedings in the Middle District

of Florida indicates that the government (and its counsel specifically) had ample

knowledge of the Lezdeys' current home address at 12800 Indian Rocks Road, Largo,

Florida, during the 120-day service period.  While the Lezdeys had used John Lezdey's

business address in prior filings, they filed a notice of change of address in Lezdey II

on September 24, 2012 – well before the government's first attempt at service in this

case – and have consistently used their current address thereafter.  See Lezdey II,

Docket # 26.  Even if the government's counsel were unaware of the address change at

the time it was filed, he certainly knew of it by November 23, 2012, when he noticed

depositions in Lezdey I and listed the Lezdeys' current address in the certificate of

service.  See Lezdey I, Docket # 55, Ex. 1.

Nevertheless, the government inexplicably made no effort to serve the Lezdeys

at their current address and instead continued to attempt service at incorrect or

outdated addresses.  Moreover, far from "act[ing] diligently in trying to effect service,"

the government waited two months after filing its complaint before first attempting to

serve the Lezdeys; emailed them last-minute requests for waivers in late November

with deadlines that went beyond the expiration of the 120-day period; never sought an

enlargement of time under Fed. R. Civ. P. 6(b) as prescribed by Local Rule 4.1; and
failed to serve Countrywide Homes Loans, Inc., the other defendant in this case.  Given
such half-hearted efforts and a lack of evidence that the Lezdeys were evading service,
the government has not shown good cause for its failure to effectuate service on time.

### 4. Discretionary Extension of Time

Courts have discretion under Rule 4(m) to extend the time for service even
absent a showing of good cause.  Riverdale Mills Corp. v. U.S. Dep't of Transp. Fed.
Aviation Admin., 225 F.R.D. 393, 395 (D. Mass. 2005).  This determination may rest on
"a number of factors, including whether '(a) the party to be served received actual
notice of the lawsuit; (b) the defendant would suffer . . . prejudice; and (c) plaintiff would
be severely prejudiced if his complaint were dismissed.'"  Id. (quoting In re Sheehan,
253 F.3d at 512).

As evidenced by her motion, Noreen Lezdey, arguably along with Jamie Holding
Company and World Financial, received actual notice of the lawsuit at some point.  But
it is unclear whether Countrywide Home Loans, Inc., has ever received actual notice or
whether it would suffer prejudice as a result of an extension of the service period.
Moreover, the government is unlikely to be severely prejudiced by dismissal of its
complaint, particularly since it can file a new complaint without consequence to its
claims.  Cf. Tobins, 483 F. Supp. 2d at 80 (plaintiff may be prejudiced where dismissal
would bar claims due to expiration of statute of limitations); Fed. R. Civ. P. 4(m),
Advisory Committee Note, 1993 Amendments ("Relief may be justified, for example, if
the applicable statute of limitations would bar the refiled action . . . .").  It is also worth

noting that the plaintiff here is a not a pro se litigant or one proceeding in forma pauperis, but the United States, with all its attendant experience and resources.  Cf. McIsaac, 193 F. Supp. 2d at 384 (positing that a discretionary extension is "exceptional relief . . . appropriate only in circumstances where an extension of time is sought prior to the expiration of Rule 4(m)'s deadline, or where a pro se litigant can show confusion on his part, either because of his unfamiliarity with the rules, or because of his reliance on the misleading advice of others.").  The government was well aware of the service requirements and fully capable of complying with them, yet inexcusably failed to do so. A discretionary extension of the service timetable is unwarranted.

**IV.  Conclusion**

Defendant Noreen Lezdey's motion (Docket # 10) is ALLOWED.  As the government has not served any of the defendants with the original complaint, the case is hereby DISMISSED without prejudice as to all defendants.

SO ORDERED.


_____February 26, 2013_____              _____/s/Rya W. Zobel_____
DATE                                                        RYA W. ZOBEL
                                                      UNITED STATES DISTRICT JUDGE